STATE OF MAINE
CUMBERLAND, ss.

MAY 1 3 55 PM '00

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-98-281

TDW-CUM-5/4/2000

BRUNSWICK INTERSTATE
OASIS, INC.,

Plaintiff

vs.

MAINE MUTUAL FIRE
INSURANCE CO.,

Defendant

ORDER ON DEFENDANT'S
MOTION TO AMEND,
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION TO
CONFIRM APPRAISAL AWARD

This action involves an insurance claim resulting from an accident that occurred on May 23, 1996, when a tractor-trailer operated by an employee of Donnelly Farms, Ltd., a Canadian company, left the roadway and collided with a building that was part of an EconoLodge Motel operated by plaintiff Brunswick Interstate Oasis, Inc.. The specific portion of the motel that was destroyed was a building that was used as an office and perhaps also as a dwelling by the resident managers of the motel.

The owners of the real property constituting the Interstate Oasis Motion are Ray and Inge Weymouth. They lease the property to Brunswick Interstate Oasis, Inc., the plaintiff in this action. Ray and Inge Weymouth are also the sole shareholders and principal officers of Brunswick Interstate Oasis, Inc. (hereafter "Interstate Oasis, Inc").

At the time of the May 23, 1996 accident Interstate Oasis, Inc. had a policy of insurance with defendant Maine Mutual Fire Insurance Co. that included coverage,

inter alia, for buildings, business personal property, and loss of income. In June of 1996 Interstate Oasis, Inc. received payment of $117,200 from Maine Mutual and assigned any cause of action it may have had as a result of the May 23, 1996 accident to Maine Mutual "to the extent of the payment above made".[1] In August of 1996, Maine Mutual in turn received payment of $117,200 -- the amount it had paid out to Interstate Oasis, Inc. in June -- from the Canadian insurer of Donnelly Farms.

In April of 1997, Interstate Oasis, Inc. and Ray and Inge Weymouth, along with three Interstate Oasis, Inc. employees, filed suit against Donnelly Farms and against its driver in Federal court. Brunswick Interstate Oasis, Inc. et al. v. Nason, docket no. CV-97-131-P-C. The entire complaint in the federal case has not been made part of the record before this court, but from the portions submitted it appears that the complaint included claims by the individual Interstate Oasis employees for personal injuries (principally emotional distress), that the Weymouths sought recovery for property damage as the owners of the motel property, and that Interstate Oasis, Inc. sought damages for loss of business property, loss of income and loss of personal business property.[2]

In July of 1997 Maine Mutual made an additional payment of $25,000 to Interstate Oasis, Inc. denominated as an "advance - business income". This payment appears to have been made as an initial payment toward the coverage for loss of

---

[1]    This is consistent with a condition in the policy that appears to provide that if the insured has rights to recover damages from a third party, those rights are transferred to Maine Mutual "to the extent of our payment". Condition J(1).

[2]    Maine Mutual was not a party to the federal action.

2

business income provided by Maine Mutual's policy. Maine Mutual also sought repayment of this amount from Donnelly Farms's Canadian insurer and was advised that no further payments would be made, at least not while the federal lawsuit against Donnelly Farms was pending.

In May of 1998, Interstate Oasis, Inc. brought this action against Maine Mutual, claiming that Interstate Oasis, Inc. was entitled to further payments from Maine Mutual on its policy and was also entitled to damages, costs, attorneys fees, and interest pursuant to 24-A M.R.S.A. §2436-A ("unfair claims settlement practices").

In July of 1998, shortly after the commencement of trial in the federal action, a settlement was reached between the plaintiffs in the federal action and Donnelly Farms. Under that settlement Donnelly Farms apparently paid a total of $372,000. It is not clear to the court exactly how that payment was allocated, although there is a document in the record entitled "Allocation Memorandum" that indicates that $247,487.81 was allocated to building replacement cost, $39,512.19 to loss of building use, and $85,000 to legal fees.[3] As part of the settlement, the Weymouths --- individually and as officers of Interstate Oasis, Inc. -- agreed to defend and indemnify Donnelly Farms on any further claims that might be brought against

---

[3] If so, the individual plaintiffs received nothing on their claims for personal injuries. The record does not definitively establish how much of the settlement was paid to the Weymouths and how much, if any, was paid to Interstate Oasis, Inc.. However, in this action Interstate Oasis, Inc. indicated that the entire amount went to the Weymouths. The court is also unable to determine exactly how the $247,487.81 allocated to building replacement cost in the federal settlement relates to the $117,200 already paid by Maine Mutual for property damage in June of 1996, how the $39,512.19 paid for loss of use in the federal settlement relates to the $25,000 advanced by Maine Mutual in July of 1997 for loss of business income, or how any of these figures relate to the additional amounts sought from Maine Mutual in this action.

3

Donnelly Farms as a result of the May 23, 1996 accident, specifically including any subrogation claims that might be brought against them in or as a result of this case.

In October of 1998, Maine Mutual filed a third party complaint against Donnelly Farms in this case. On June 9, 1999 the third party complaint was dismissed by this court (Cole, J.), which concluded that Maine Mutual's claim was a claim for equitable subrogation and that a claim for equitable subrogation could not be asserted until Maine Mutual had fully paid Interstate Oasis, Inc. on its policy. At that time, the court declined to consider what effect, if any, the settlement in the federal action would have on the respective rights of the parties.

Almost immediately thereafter, the parties entered into an agreement to have the total amount due and payable under the policy appraised pursuant to the terms of the policy. This procedure, which involved both parties selecting appraisers who in turn selected a disinterested umpire to resolve any issues that could not be agreed upon by the appraisers, resulted in a decision on January 20, 2000 that the total amount payable under the policy to the insureds (designated in the appraisal award as Interstate Oasis, Inc. and Ray and Inge Weymouth) totalled $272,510.41.

In the wake of the appraisal award, Interstate Oasis, Inc. moved pursuant to 14 M.R.S.A. §5937 to confirm the award and to require Maine Mutual to pay $130,310.41, representing the difference between the $272,510.41 award and the $142,200 previously paid by Maine Mutual ($117,200 in 1996 and $25,000 in 1997). This figure does not include whatever additional amount in interest and attorneys fees Interstate Oasis, Inc. might prove under 24-A M.R.S.A. §2436-A at trial. Maine

4

Mutual opposed the motion to confirm insofar as it sought payment of the $130,310.41, arguing that while the appraisal was intended to resolve the amount payable under the policy, the agreement to submit that issue to the appraisers expressly had not been intended to "determine, waive, or in any way affect any question of subrogation or indemnification, which issues shall be determined by the court in supplemental proceedings".

At the same time, Maine Mutual filed two other motions. The first was a motion to amend its answer to assert, as a defense, that Interstate Oasis breached the terms of its insurance policy by suing Donnelly Farms, settling with Donnelly Farms, and agreeing to indemnify Donnelly Farms against any subrogation action by Maine Mutual. Maine Mutual also sought to amend its answer to assert a counterclaim against Interstate Oasis, Inc. for the $25,000 it paid out in 1997, which it claims that it now cannot recover from Donnelly Farms as a result of the federal settlement.

Maine Mutual's second motion was a motion for summary judgment, contending that Interstate Oasis, Inc. is not entitled to any further monies from Maine Mutual because Interstate Oasis, Inc. breached its insurance contract by settling with Donnelly Farms, thereby allegedly destroying Maine Mutual's right of subrogation. In Maine Mutual's view this should relieve it from having to pay the additional $130,310.41 owed pursuant to the appraisal and from having to pay any amounts pursuant to Interstate Oasis, Inc.'s unfair claims practices claim pursuant to 24-A M.R.S.A. §2436-A.

5

At the outset, Interstate Oasis, Inc. argues that both Maine Mutual's motion to amend and its motion for summary judgment are untimely, since Rule 16(c)(2), as it existed at the time of the Expedited Pretrial Order in this case, provided that motions for summary judgment shall be filed no later than 60 days after the discovery deadline and that, without leave of court, all other motions (except motions in limine) must be filed by the discovery deadline. Both of Maine Mutual's motions in this case were filed more than 60 days after close of discovery. With respect to Maine Mutual's motion for summary judgment, Interstate Oasis's objection as to timeliness is well founded. Maine Mutual's theory -- that Interstate Oasis, Inc. violated its insurance contract by filing suit against and settling with Donnelly Farms[4] -- could have been the subject of a motion once the federal settlement became final in the summer of 1998. The court can find no justification for Maine Mutual's waiting until March 2000 to file a motion for summary judgment on that issue.

Moreover, even if this were not the case, the court believes that although many of the underlying facts are not disputed, there are factual and legal issues precluding summary judgment for Maine Mutual in this case. Interstate Oasis, Inc.'s theory is that Maine Mutual unjustifiably delayed in paying and adjusting the claim in this case, dragging its feet as to both the disputed and undisputed portions

---

[4] This theory is based upon certain contractual language in the policy, primarily a provision that if the insured "has rights to recover damages from another, those rights are transferred as to the extent of our payment. [The insured] must do everything necessary to secure our rights and must do nothing after loss to impair them". Policy Condition J(1).

of Interstate Oasis, Inc.'s claim so as to force Interstate Oasis to pursue Donnelly Farms and obtain the money from Donnelly Farms rather than from Maine Mutual, even though Interstate Oasis alleges that this resulted in its nearly going bankrupt. If Interstate Oasis can prove this claim, it is entitled at a minimum to recover interest and attorneys fees from Maine Mutual under 24-A M.R.S.A. §2436-A, along with any other damages that would be recoverable for unfair claims practices on the part of Maine Mutual under the circumstances of this case.[5]

In addition, on this record, the court is not prepared to conclude that -- absent Interstate Oasis Inc.'s settlement with Donnelly Farms -- Maine Mutual would be necessarily entitled to bring a subrogation action against Donnelly Farms for the additional $130,310.41 payable to Interstate Oasis, Inc. under the appraisal. This depends in part on a determination of exactly what the $130,310.41 consists of and whether that amount all relates to claims that could have been recoverable from Donnelly Farms. It is at least conceivable to the court that Maine Mutual offered coverage in certain areas where no recovery would have been possible from a tort feasor. If so, the court can see no basis for any argument that Maine Mutual should not pay the amount of that coverage.

This being said, the court also notes that there appears to be some overlap between the $130,310.41 that Interstate Oasis Inc. is now seeking pursuant to the appraisal (plus the $25,000 already advanced for loss of business income) on the one

---

5  It appears that the primary damages would be the $130,310.41 which remains unpaid. The court cannot determine whether Interstate Oasis, Inc. is seeking any other damages in addition to that figure plus statutory interest and attorneys fees.

hand, and the $372,000 already recovered by the Weymouths and/or Interstate Oasis Inc. in the federal settlement on the other hand. To the extent that such overlap exists, the court is not prepared to reject out of hand Maine Mutual's argument that Interstate Oasis and/or its shareholders are not entitled to obtain a double recovery from Maine Mutual after having recovered damages for the same injury in the federal settlement. Moreover, to the extent that the plaintiffs in the federal action allocated all amounts recovered to the Weymouths personally rather than to Interstate Oasis, Inc., Maine Mutual is not bound by that allocation.

The court is also not prepared to reject out of hand Maine Mutual's argument that Interstate Oasis Inc's release of Donnelly Farms in the federal settlement eliminated any ability Maine Mutual would potentially have to seek recompense from Donnelly Farms for any amount that Maine Mutual has to pay to Interstate Oasis, Inc. The court is mindful of Justice Cole's ruling that Maine Mutual cannot pursue any subrogation claim it may have until it has fully paid the amount owed to Interstate Oasis, Inc. on the policy -- which has not happened yet. But the court does not necessarily think this precludes Maine Mutual from arguing that it has been deprived of a potential subrogation claim by the settlement. In other words, at this juncture in the case the court is not prepared to accept Interstate Oasis, Inc.'s apparent theory that Maine Mutual should be required to pay the full amount under the policy even if some or all of that amount has already been recovered from Donnelly Farms and even though any subrogation claim may be barred by the

8

release signed by the Weymouths.[6] But it is also not prepared to accept Maine Mutual's theory that, even if it unjustifiably stalled on its obligations under the policy, such stalling should be validated by a ruling that Maine Mutual has now been released from all its obligations. At a minimum, the respective rights of the parties appear to turn on whether Maine Mutual in fact unjustifiably failed to pay or delayed in paying the amount due on its policy -- an issue that has yet to be decided in this action. In addition, if Maine Mutual did unjustifiably fail or delay, there is also the question of what remedies – other than interest and attorneys fees – are called for and specifically whether Interstate Oasis should be found entitled to full payment even if that entails an amount that Maine Mutual would characterize as a double recovery.

As a result, although Maine Mutual's motion for summary judgment is denied, the court grants Maine Mutual leave to file its motion to amend its answer at this time and further grants the motion to amend to the extent necessary to allow Maine Mutual to assert a defense (1) that it should not have to pay any amounts for which recovery has already been obtained from Donnelly Farms in the federal settlement and (2) that it should not have to pay any amounts as to which its potential right of subrogation has been eliminated by the federal settlement.

---

[6] This is particularly true since Interstate Oasis, Inc. seems to be suggesting that Maine Mutual's only remedy, after it is forced to pay the full $130,310.41, plus any other amounts found owing under 24-A M.R.S.A. §2436-A, is to seek to recover the amounts paid by suing Donnelly Farms in the name of its insured -- even though the insured has already settled with Donnelly Farms and the insured has promised to defend and indemnify Donnelly Farms. At this juncture in the case, the court is not convinced that it is necessary to spawn further litigation in which Maine Mutual (in the name of Interstate Oasis, Inc.) would have to sue Interstate Oasis, Inc. (in the name of Donnelly Farms) when all parties are now before the court and the issues may be fully resolved.

Although the court agrees that the motion to amend was filed late, it notes that this is a complicated and somewhat confusing case and that issues relating to the effect of the federal settlement on Maine Mutual's obligations have been in this case for some time and were in fact raised, albeit in a different context, at the time of Donnelly Farm's motion to dismiss the third party complaint.

Thus the proposed defenses asserted by Maine Mutual do not inject new issues into the case. Most importantly in this context, Interstate Oasis, Inc. does not claim that the proposed amendment results in any unfair surprise or any prejudice to it. It is hard to see how it could make such an argument since the relationship between the federal settlement and the claims against Maine Mutual is obviously an extremely significant issue to both parties.

Accordingly, although the court has not reached any decision as to the merits of the defenses sought to be asserted by Maine Mutual, it will not deprive Maine Mutual of the right to raise those defenses. However, the court denies Maine Mutual's request for leave to assert a proposed counterclaim for $25,000 based on the amount it paid to Interstate Oasis in 1997. Maine Mutual may raise the $25,000 payment by way of setoff against any amounts otherwise found owing to Interstate Oasis, Inc.[7] but it is too late for Maine Mutual to assert for the first time a counterclaim seeking direct recovery against Interstate Oasis, Inc. at least eight months after the conclusion of discovery.

---

[7]    Indeed, in asking for $130,310.41 on the appraisal award, Interstate Oasis is already giving Maine Mutual the benefit of a setoff.

10

Finally, on Interstate Oasis Inc.'s motion to confirm, the court grants that motion to the extent that it confirms the appraisal award as the total amount payable under the policy but denies that motion to the extent that it seeks an immediate order requiring Maine Mutual to pay the $130,310.41 difference between that award and the amount already paid by Maine Mutual. The ultimate amount owed by Maine Mutual to Interstate Oasis, Inc., if any, including any amounts owed pursuant to 24-A M.R.S.A. §2436-A, will be determined after further proceedings. Because this case is on the trial list, those proceedings should be promptly concluded.

The clerk is directed to incorporate this decision into the docket by reference pursuant to Rule 79(a).

Dated: May 4 , 2000

Thomas D. Warren
Justice, Superior Court

11

Date Filed __05/22/98__    ___CONTRACT___    Docket No. ___CV98-281___
                              County

Action _____CONTRACT_____

BRUNSWICK INTERSTATE OASIS, INC.          MAINE MUTUAL FIRE INSURANCE COMPANY
d/b/a ECONO LODGE                                         VS.
                                          DONALD E. NASON
                                          DONNNELLY FARMS, LTD

                    MAY 24 2000

                              vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ~~J. MICHAEL CONLEY, BRIAN CHAMPION &~~ ~~TRACEY G. BURTON, ESQ. ---- 443-5576~~ ~~P. O. BOX 665 --~~ ~~BATH, MAINE 04530-0665~~ <br><br> J. MICHAEL CONLEY, ESQ  443-3434 <br> PO BOX 182 <br> BATH MAINE  04530 | JOHN C. WALKER, PA  ~~893-34~~00  878-8070 <br> ~~PO BOX 1206, WINDHAM, ME 04062~~ <br> 1321 WASHINGTON AVE, PORTLAND ME 04103 <br> ~~ANN MURRAY ESQ (NASON/DONNELLY) 945-5900~~ <br> ~~PO BOX 2429 ---- 04402-2429~~ <br> ~~BANGOR, ME --~~ |

Date of
Entry